**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JEMMIE L. WELSH,

Plaintiff,

v.

ROBIN HAGLER et al.,

Defendants.

Civil Action No. 14-cv-153 (TSC)

# MEMORANDUM OPINION

Plaintiff Jemmie Welch[1] sued the Smithsonian and two of its employees for failure to reasonably accommodate his diabetes. Before the Court is Defendants' motion to dismiss. Because Welch failed to exhaust his administrative remedies or initiate the administrative process, the motion to dismiss is granted.

## I. BACKGROUND

The Complaint alleges the following facts, which will be assumed to be true for purposes of the motion to dismiss. Plaintiff has been a security officer for the Smithsonian Institution since October 2008. (Compl. ¶ 5). Welch was diagnosed with diabetes in February 2010, and notified his manager. (*Id.*). After suffering some type of adverse action related to his medical condition in June 2010, Welch contacted Carol Gover, the accommodations coordinator for the Smithsonian Office of Equal Employment and Minority Affairs ("OEEMA"), to complain about his work conditions and request a reasonable accommodation. He received an approved reasonable accommodation in December 2010. (*Id.*).

[1] The caption in this case lists Plaintiff's last name as "Welsh," but it appears based on the briefing that his last name is actually "Welch."

Shortly after Welch received his approved accommodation, the Smithsonian transferred him to a different location (the "Pennsy Drive unit" in the "Suitland Zone"). (*Id.* ¶ 6). After the transfer, Welch alleges he suffered five separate violations of his accommodation, four of which occurred under the supervision of Defendant Sgt. Robin Hagler. Welch claims that he filed complaints regarding each alleged violation, although it is unclear where and with whom these complaints were filed. (*Id.*). As a result of these incidents, Welch filed the instant Complaint on January 31, 2014 against Hagler, Peter Mroczkewicz (the deputy director of the Office of Protective Service ("OPS")), and the Smithsonian Institution (collectively, the "Defendants"),[2] alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Welch also appears to bring a variety of other common law claims, although they all arise out of Defendants' alleged interference with his reasonable accommodation. (*Id.* ¶ 7).

## II. LEGAL STANDARD

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Nevertheless, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).

[2] Welch should have named the Secretary of the Smithsonian Institution as the sole defendant, not the Smithsonian and two of its employees. 42 U.S.C. § 2000e–16(c); *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 20 (D.D.C. 2013) ("Congress has conditionally waived the sovereign immunity of the United States under § 2000e–16, which extends the protection of Title VII to federal employees. One condition of this waiver is that the 'head of the department, agency, or unit, as appropriate, shall be the defendant.' As another court in this district has noted, '[t]his language means what it says.'") (citation omitted).

Under Rule 12(b)(1), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

## III. ANALYSIS

### a. Reasonable Accommodation

As a threshold matter, Defendants argue that Welch's claims are improper because they are brought solely pursuant to the ADA, which does not apply to federal employees. Defendants assert that Welch should have brought his disability claims under Section 501 of the Rehabilitation Act, which provides a cause of action for federal employees to challenge disability discrimination. *See* 29 U.S.C. § 791(b). The Court finds that because "[c]ourts must construe *pro se* filings liberally,"[3] *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because Welch would likely be granted leave to amend the Complaint, and because the Defendants will not be prejudiced by reading the Complaint as bringing a disability claim under the Rehabilitation Act as opposed to the ADA, the Court will construe Welch's claims as brought under the Rehabilitation Act.

#### i. Failure to Exhaust Administrative Remedies

Defendants move to dismiss the Complaint because Welch failed to exhaust his administrative remedies. Specifically, Defendants point out that Welch never began informal equal employment opportunity ("EEO") counseling with respect to the five alleged incidents,

[3] Welch was proceeding *pro se* at the time he filed the Complaint—his attorney filed a notice of appearance after Defendants filed their motion to dismiss.

meaning he failed to take even the first steps necessary to exhaust his administrative remedies for his reasonable accommodation claims. Welch responds that he attempted to meet the exhaustion requirements by submitting complaints to the Smithsonian's EEO counselor, meaning Defendants were put on notice of the alleged violations.

Section 501 of the Rehabilitation Act requires federal employers, including the Smithsonian, to take "affirmative action . . . for the hiring, placement, and advancement of individuals with disabilities." 29 U.S.C. § 791(b). Judicial review under Section 501 is limited to employees "'aggrieved by the final disposition' of their administrative 'complaint,'" which the D.C. Circuit has interpreted as "mandating administrative exhaustion." *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (citations omitted). The Equal Employment Opportunity Commission ("EEOC") has implemented regulations setting forth the exhaustion process. First, an employee complaining of disability discrimination must "consult a Counselor prior to filing a complaint in order to try to informally resolve the matter . . . An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory[.]" 29 C.F.R. § 1614.105(a). Informal counseling is the first step in the administrative process, after which an employee must file a formal complaint and a stated amount of time must elapse before the employee may file a civil action in U.S. district court. 29 C.F.R. § 1614.407.

The D.C. Circuit has held that exhaustion under the Rehabilitation Act is jurisdictional, unlike other federal statutes where exhaustion is a prudential requirement subject to futility and other exceptions.[4] *Spinelli*, 446 F.3d at 162 (holding that because "there was no administrative

[4] It is an unsettled question whether the D.C. Circuit in *Spinelli* meant that exhaustion under the Rehabilitation Act is jurisdictional in all cases, or whether its decision was limited to those situations where the complainant never receives a final disposition of their administrative complaint. *Doak v. Johnson*, 19 F. Supp. 3d 259, 269 n.11 (D.D.C. 2014) (citing cases). But the Court need not address that issue here, as like the plaintiff in *Spinelli*, Welch never filed a formal administrative complaint. *See also Barkley v. U.S. Marshals Service*, 766 F.3d 25, 34-35 (D.C. Cir. 2014) (declining to address whether Rehabilitation Act exhaustion is a jurisdictional requirement not subject to any prudential exceptions).

complaint and thus no final disposition of one, the district court lacked jurisdiction"); *Leiterman v. Johnson*, No. 13-394, 2014 WL 3708040, at *13 (D.D.C. July 28, 2014); *Rosier v. Holder*, 833 F. Supp. 2d 1, 8 (D.D.C. 2011). Because exhaustion is a jurisdictional requirement, it is the plaintiff's burden to plead and prove that the Court has jurisdiction. *Rosier*, 833 F. Supp. 2d at 8.

It is unclear whether Plaintiff even disputes that he did not meet the exhaustion requirement. He does not allege that he exhausted his administrative remedies; instead, he argues that "Defendants and the OEEMA were put on notice of several alleged disability discrimination incidents" as a result of Welch's communications with Gover, and that by "us[ing] the Smithsonian's complaint channels to document all the alleged incidents . . . Officer Welch sought to exhaust without success his administrative remedies prior to filing his complaint." (Pl. Opp'n 4). Defendants argue that Welch's admission that he sought to exhaust his administrative remedies "without success" is tantamount to admitting he fails the exhaustion requirement. (Def. Reply 2-3). Defendants also argue that the communications Welch had with Gover do not "show that Mr. Welch ever sought OEEMA counseling for the events alleged in his complaint." (*Id.* at 3). Defendants attach to their motion a declaration from Angela Roybal, an EEO Counselor in the OEEMA, stating that Welch never entered either the informal or formal complaint process with Smithsonian's EEO office. (Def. Mot. Ex. 1).

Under the applicable EEOC regulations, in order to start the informal counseling process an employee must "initiate contact with a Counselor" within 45 days of the alleged discrimination. 29 C.F.R. § 1614.105(a). The regulation does not define what it means to "initiate contact," but the EEOC has consistently held that "a complainant may satisfy the criterion of EEO Counselor contact by initiating contact with any agency official logically connected with the EEO process, even if that official is not an EEO Counselor, and by exhibiting

an intent to begin the EEO process." EEOC Management Directive 110, at ch. 2, § I.A, n.1 (Nov. 9, 1999) (citing *Kinan v. Cohen*, Request No. 05990249, 1999 WL 320546 (May 6, 1999)). An agency's interpretation of its own regulation is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)). While the D.C. Circuit has not addressed the meaning of the phrase "initiate contact," numerous other courts have adopted the EEOC's interpretation. *Nygren v. Ashcroft*, 109 F. App'x 816, 819 (8th Cir. 2004) (per curiam) (deferring to the EEOC's interpretation); *Lane v. Tschetter*, No. 05-1414, 2007 WL 2007493, at *4 (D.D.C. July 10, 2007) (same); *Klugel v. Small*, 519 F. Supp. 2d 66, 70-73 (D.D.C. 2007) (same); *Johnson v. Glickman*, 155 F. Supp. 2d 1240, 1247-48 (D. Kan. 2001) (same). The Court agrees with these courts' reasoning and adopts the EEOC's interpretation regarding when an employee "initiate[s] contact" for exhaustion purposes.[5] The Court must therefore determine whether Welch (1) contacted an agency official logically connected with the EEO process and (2) exhibited an intent to begin the EEO process when he sent complaints regarding the alleged incidents.

Although it is not at all clear, the Court, in viewing the evidence in the light most favorable to the Plaintiff, as it must, will assume that by referencing the complaints he sent to Smithsonian employees about the alleged incidents, Welch intends to argue that these communications were meant to initiate the informal EEO counseling process, thereby satisfying that aspect of the exhaustion requirement. While Welch references five incidents of discrimination in his Complaint, he has (at most) presented evidence with respect to only three

[5] The EEOC's interpretation is also appropriate because the phrase "initiate contact" is ambiguous, and when a regulation is ambiguous courts should defer to an agency's interpretation. *See Christensen v. Harris County*, 529 U.S. 576, 588 (2000).

incidents. In an e-mail dated January 10, 2013 with the subject line "Complaint," Welch notified three individuals (Anita Montgomery, Lamont Banks, and Tameika Marshall) of an incident that occurred on January 4, 2013 between Welch and his supervisor, Sgt. Haywood. Welch stated that he advised Sgt. Haywood that he needed to take a break to eat because his blood sugar level was dropping as a result of his diabetes. (Pl. Opp'n Ex. 4). Sgt. Haywood denied the request, and Welch was denied the opportunity to eat or take his diabetes medication for approximately ten minutes. Welch also alleged in the e-mail that he did not receive two scheduled breaks during his January 4 shift. (*Id.*). Montgomery responded to Welch's e-mail four days later, stating that "I've copied the Security Managers to properly address this incident. Managers please investigate further and ensure we are compassionate and look out for each other within OPS daily." (*Id.*).

The second incident is referenced in an e-mail from Carol Gover to Alan Smith, with a copy to Montgomery and Melanie Engelen, dated March 19, 2013. (Pl. Opp'n Ex. 6). (Welch does not indicate who Smith and Engelen are, but the Court will assume for purposes of this motion that they are Smithsonian employees.) Gover forwarded Welch's original 2010 accommodation decision and mentioned that as a result of Welch's transfer, the accommodation may need to be tailored to his new location. She also explained that "[Welch] called me this afternoon and said he is having problems getting breaks to take his medicine and eat at CRC." (*Id.*). Shortly after sending this e-mail to Smith, Gover then forwarded it to Welch. Welch responded a few weeks later, inquiring about "the status of my accommodation case. Has an agreement with CRC, Pennsy, Garber, etc. been made[?]" (*Id.*). Gover responded later that day: "Alan Smith said that OPS Suitland Zone will work with the accommodation that HMSG put in place." (*Id.*). Welch did not follow-up to Gover's e-mail.

The last incident occurred on November 25, 2013. Welch sent an e-mail the next day (November 26) to Gover with the subject line "FYI – Accommodations Violation Complaint" inquiring about a previous complaint he had made[6] and stating that he had not received any response to that previous complaint. (Pl. Opp'n Ex. 5). Welch then stated "[t]his email is for your information to update you on the situation. Last night again while on duty at CRC Loading Dock I was not given my 6:00pm scheduled break." (*Id.*). Welch claimed that four other officers working the same shift were allowed to take smoke breaks and eat at their convenience, while Welch had to wait until 7:20pm to take a break. (*Id.*). Welch also claimed he only received one break during that shift. (*Id.*). Gover responded later that day that she would follow up the next week, but in the interim Welch should contact her or two other individuals "on the actual day that you do not receive a break so that the situation can be reviewed immediately. Also, please make sure that you remind the supervisor onsite at the beginning of your post . . . that you need a break and ask if you [sic] when you should take it." (*Id.*). On December 11, 2013, Gover responded in addition to her previous e-mail and stated "[t]he supervisors on 2nd relief received refresher training on accommodations for employees last week. There should not be an additional incidents [sic] of missed breaks for you. Please call me . . . if you have any questions." (*Id.*). Welch did not respond or follow-up to Gover's e-mail, and filed the instant lawsuit less than two months later.

[6] The prior incident occurred on November 7, 2013. In his November 26 e-mail, Welch forwarded a November 7 e-mail which referenced an "attached complaint." (Pl. Opp'n Ex. 5). The "attached complaint" is not attached to Welch's opposition brief and Welch does not provide any other details describing the November 7 incident. The Court is unable to assess whether Welch initiated contact with respect to the November 7 incident, and finds that Welch has not pled sufficient facts to show he exhausted his administrative remedies with respect to this incident.

1. Agency Official Logically Connected With the EEO Process

The first question is whether Welch contacted an "agency official logically connected with the EEO process." As noted above, Welch contacted Carol Gover with respect to the second and third incidents. Gover is an agency official whom an employee could construe as being connected with the EEO process. She works in the Office of Equal Employment and Minority Affairs—the same office as Angela Roybal, Smithsonian's EEO Counselor. Gover met with Welch in October 2010 regarding his requested accommodation and was listed as the contact person on his official accommodation decision. (Pl. Opp'n Ex. 3). Gover also handled Welch's later complaints regarding his accommodation and managed the Smithsonian's response. (*Id.* at Exs. 5-6). Gover, by reason of both her position at OEEMA and her interaction with Welch, is clearly an agency official connected with the EEO process. The Court will also grant Welch "the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co.,* 642 F.3d at 1139, and assume that the three individuals Welch contacted with respect to the first incident (Montgomery, Banks, and Marshall) are also Smithsonian officials connected with the EEO process.

2. Intent to Begin the EEO Process

Notwithstanding the Court's finding that there is sufficient evidence to infer that Welch contacted the appropriate agency officials, Welch's claims nonetheless fail for all three incidents. Based on the facts alleged in the Complaint and other information in the record which the Court may consider on a Rule 12(b)(1) motion, Welch has not shown that his communications exhibited an intent to begin the EEO process.

In previous cases where courts have found the requisite intent, the employee manifested a clear desire to initiate the EEO process despite not using the normal channels to do so. For

example, in *Culpepper v. Schafer*, the Eighth Circuit found the requisite intent where the employee's letter to an official connected with the EEO process stated "'[d]ue to the nature of my complaint and previous complaints, I would request that the informal phase be waived and the formal phase begins [sic] with this complaint and supporting documentation. If not, consider this my official contact to begin the process.'" *Culpepper v. Schafer*, 548 F.3d 1119, 1121 (8th Cir. 2008). Another court similarly found intent where "plaintiff told [an appropriate official] that the e-mail was '[f]or the EEO record.'" *Johnson*, 155 F. Supp. 2d at 1247-48 ("Although the message is brief, it connotes an intent to begin the EEO process . . . Moreover, plaintiff followed through with her intent. Within a week of the e-mail, she had spoken with and written a detailed memorandum to EEO counselor Scurry concerning her claims."). *See also Ortiz v. Cohen*, Appeal No. 01994134, 1999 WL 1049404, at *1 (E.E.O.C. 1999) (complainant's conduct after initial meeting with counselor further demonstrated intent to begin EEO process); *Moss v. Perry*, Appeal No. 01962472, 1997 WL 91106, at *2 (E.E.O.C. 1997) (noting that complainant "did not simply send the letter [to the EEO counselor] and do nothing. Rather, she actively pursued her complaint, as evidenced by correspondence to EEO officials over the next several months."). By contrast, at least one prior decision in this Court found no intent where the employee's letter merely stated that the employer's actions could lead to a Rehabilitation Act claim and therefore "[t]he letter neither charges discrimination nor evidences Klugel's intention to initiate the EEO process." *Klugel*, 519 F. Supp. 2d at 72.

Welch's communications to the Smithsonian officials are more akin to those at issue in *Klugel*; they do not show that he intended to initiate the EEO process. In the January 10 e-mail regarding the first incident, Welch merely describes the events that transpired. He does not reference the EEO process or ask the recipients to take any action at all. He also did not follow

up when Montgomery instructed the security managers to address the situation, suggesting that Welch did not intend on pursuing the matter further. While he did title his e-mail "Complaint," there is no other indication that he intended his "Complaint" to begin the EEO process.

Welch also did not exhibit the required intent with respect to the second incident. In her March 2013 e-mail, Gover stated that Welch called her and "said he is having problems getting breaks to take his medicine and eat." (Pl. Opp'n Ex. 6). Gover did not say that Welch inquired about making an EEO complaint or wished to move forward in the EEO administrative process. After Gover forwarded this e-mail to Welch, he responded a month later by asking if "an agreement with CRC, Pennsy, Garber, etc. [has] been made." (*Id.*). Welch sought to clarify the reasonable accommodation for his new location; he did not seek to engage in the EEO process and move forward to challenge the agency's conduct.

The November 26 e-mail regarding the third incident is a slightly closer case. Unlike the other incidents, Welch did follow-up with Gover regarding a November 7 incident and referenced "management's continued disregard of accommodations that have already been approved and addressed on several occasions." (Pl. Opp'n Ex. 5). He also captions the e-mail "FYI – Accommodations Violation Complaint." (*Id.*). However, Welch made no reference to the EEO process and did nothing more than demand a response to his complaint—he did not indicate a desire to move forward administratively. Similarly to his January 10 e-mail, in the November 26 e-mail Welch simply described the details of the third incident. He did not suggest he would like to pursue an EEO claim, and specifically stated "[t]his email is for your information to update you on the situation." (*Id.*). Gover twice responded to the e-mail, and Welch did not follow up. Most tellingly, Welch filed this lawsuit just over two months after the third incident. It would have been nearly impossible to have exhausted administrative remedies

in this short time frame given the standard time periods involved in processing an EEO complaint. 29 C.F.R. § 1614.105 (30-day period for counseling); § 1614.106 (180-day investigation period). The timing of Welch's federal lawsuit suggests that he had no intention of engaging in the administrative process, but instead intended on proceeding directly to court.

The record indicates that Welch was aware of how to engage in the EEO process, as he had completed the OEEMA form requesting counseling services when he originally requested an accommodation in 2010. (Pl. Opp'n Ex. 2). While EEOC regulations make clear that such a formalized request is not necessary, that Welch was familiar with OEEMA's procedures and chose not to pursue them is evidence that he did not intend to start the EEO process with respect to the three later incidents.

Furthermore, even if Welch had manifested an intent to *start* the EEO process and therefore complied with the "initiate contact" requirement, he did nothing to continue or finish that process. Nowhere does Welch allege that he engaged in or completed counseling, filed an administrative complaint, received a final disposition of the complaint, or took any other steps to exhaust his administrative remedies. Simply putting Defendants "on notice" of the incidents that occurred is not sufficient for exhaustion purposes. Excusing Welch's failure to exhaust under these circumstances would frustrate the twin purposes of the exhaustion requirement—protecting administrative agency authority and promoting efficiency. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Welch cannot bypass the Smithsonian's internal procedures for handling discrimination complaints—the same procedures that afforded Welch his original accommodation in the first place. Because Welch failed to exhaust his administrative remedies, the Court does not have jurisdiction to consider his claims.

b. Common Law Claims

Welch alleges a litany of conclusory and ambiguous tort claims[7] in addition to his statutory claims. These claims all arise out of the same factual allegations—that the Defendants denied Welch his reasonable accommodation. A plaintiff cannot rename Rehabilitation Act claims as tort claims to avoid exhausting his administrative remedies, as the Rehabilitation Act is the exclusive remedy for federal employees alleging disability discrimination. *Paegle v. Dep't of Interior*, 813 F. Supp. 61, 66-67 (D.D.C. 1993) ("We agree that when a federal employee seeks to redress rights guaranteed by the Rehabilitation Act, that Act preempts other actions to redress the same discrimination. *See Shirey v. Devine*, 670 F.2d 1188, 1191 n.7 (D.C. Cir. 1982) (noting similarities between Title VII and Rehabilitation Act and extending principle that Rehabilitation Act would provide exclusive remedy for handicap discrimination claims))"; *Taylor v. Gearan*, 979 F. Supp. 1, 5 (D.D.C. 1997); *Rattner v. Bennett*, 701 F. Supp. 7, 9 (D.D.C. 1988); *Gibson v. Henderson*, 129 F. Supp. 2d 890, 903 (M.D.N.C. 2001) (collecting cases). "In determining whether the remedies contained in the Rehabilitation Act . . . preempt plaintiff's [] claims, the pertinent inquiry is whether plaintiff is 'seek[ing] to redress the violation of rights guaranteed by the[se] statutes.'" *Thorne v. Cavazos*, 744 F. Supp. 348, 351-52 (D.D.C. 1990) (citing *Davis v. Passman*, 442 U.S. 228, 247 n.26 (1979)). In this case, all of Welch's claims—statutory and common law—arise out of the same nucleus of facts: that Defendants interfered with Welch's reasonable accommodation. As Welch admits, "[t]he plaintiff's causes of action arise from a federal statute–the Rehabilitation Act of 1973." (Pl. Opp'n 3). Because Welch's tort claims are

---

[7] Welch also references a "contractual relationship" between himself and OPS but does not allege a breach of contract aside from a "breach of terms of this accommodation" and "breach of Reasonable Accommodations," which simply restate his Rehabilitation Act claims. (Compl. 1, ¶ 7).

really just Rehabilitation Act claims under a different name, they must be dismissed because the Rehabilitation Act provides his sole remedy.

Moreover, even if Welch were permitted to bring tort claims in addition to his Rehabilitation Act claims, the tort claims would fail. Because Welch is suing two federal employees, his claims would need to comply with the Federal Tort Claims Act ("FTCA"), which "grants federal district courts jurisdiction over claims arising from certain torts committed by federal employees in the scope of their employment, and waives the government's sovereign immunity from such claims." *Sloan v. U.S. Dep't of Housing & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001) (citing 28 U.S.C. §§ 1346(b) & 2674). Under the FTCA, "the United States is the only proper party defendant." *Cureton v. U.S. Marshal Serv.*, 322 F. Supp. 2d 23, 25 n.4 (D.D.C. 2004) (internal quotation marks and citations omitted). In addition, under the FTCA, plaintiffs must exhaust administrative remedies, which "occurs once a claimant has presented the appropriate federal agency with a claim describing the alleged injury with particularity and setting forth a 'sum certain' of damages, and the agency has (1) denied the claim in writing or (2) failed to provide a final disposition within six months of the claim's filing." *Id.* at 27. Welch has neither named the United States as a defendant nor made any allegations that he attempted to exhaust his FTCA administrative remedies. Therefore, even if Welch could bring tort claims in this case (which he cannot) they would nonetheless be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted and Welch's claims are dismissed without prejudice. An appropriate Order accompanies this Memorandum Opinion.

Date:  March 18, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge